# UNITED STATES DISTRICT COURT
for the
### EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

**Information associated with cellular telephone number 414-374-2551 stored by Verizon Wireless.**

Case Number: 11-M-276

### APPLICATION & AFFIDAVIT FOR SEARCH WARRANT

I, Jill Ceren, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See attachment A.**

located in the Eastern District of Wisconsin there is now concealed: **See attachment B.**

The basis for the search warrant under Fed. R. Crim. P. 41(c) is which is (check one or more):

✓ evidence of a crime;
✓ contraband, fruits of a crime, or other items illegally possessed;
❑ property designed for use, intended for use, or used in committing a crime;
❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 21, United States Code, Sections 841(a)(1), 843(b), and 846

The application is based on these facts:

✓ Continued on the attached sheet, which is incorporated by reference.
❑ Delayed notice of ____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature
Name and Title: DEA Special Agent

Sworn to before me, and signed in my presence.

Date _August 24_, 2011

City and state: Milwaukee, Wisconsin

_____
Judge's signature
THE HONORABLE PATRICIA J. GORENCE
United States Magistrate Judge
*Name & Title of Judicial Officer*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with 414-374-2551 that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2

**ATTACHMENT B**

**Particular Things to be Seized**

**I. Information to be disclosed by Verizon Wireless**

To the extent that the information described in Attachment A is within the possession, custody, or control of **Verizon Wireless, Verizon** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from **July 1, 2011** to present;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device

associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

      f.      All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from **July 1, 2011** to present;

      g.      Incoming and outgoing telephone numbers, from **July 1, 2011** to present;

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. Sections 841(a)(1), 843(b) and 846 involving Chamar D. Rogers since July 1, 2011 including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      the mailing, receipt and distribution of controlled substances

b.      Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

2

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jill Ceren, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.  The information to be searched for is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require the provider to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.    I am a Special Agent with the Drug Enforcement Administration, and have been since 1990.  I have specialized training and experience in narcotics smuggling and distribution investigations.  During my tenure with the DEA, I have participated in over 100 narcotics investigations, and have authored over 100 affidavits supporting wire and electronic intercepts, criminal complaints, search and seizure warrants.  I have debriefed more than 100 defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.  I am familiar with narcotics traffickers' methods of operation including the distribution, storage, importation, and transportation of narcotics, the collection of money which

represents the proceeds of narcotics trafficking, and money laundering. Further, I have received training in the use of internet, electronic, and wire methods of operation of drug traffickers.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. I have participated in numerous investigations involving violations of federal, state, and local drug trafficking laws. I have had both formal training in and participated in numerous complex investigations including many investigations which utilized traditional law enforcement methods, including, but not limited to, interviews with citizen witnesses, interviews with confidential informants and sources, interviews with cooperating defendants, the gathering and analysis of information from various law enforcement agencies, the gathering and analysis of documentary evidence, consensually recorded conversations between confidential informants and targets of investigations, the analysis of pen register, trap and trace, and telephone toll data, collection of public source information, physical surveillance, GPS surveillance, search and seizure warrants, and court-authorized monitoring of wire and electronic communications.

5. I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. Sections 841(a)(1), 843(b), and 846 have been committed by Kendea C. Lever, Chamar D. Rogers and others. There is also

2

probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

## PROBABLE CAUSE

7.      On August 11, 2011, United States Postal Inspector Daniel Kakonis obtained a federal search warrant for an Express Mail package mailed from Long Beach, California and addressed to a "Miss Lever" at "2862 North 56th Street, Milwaukee, WI, 53210." The package was opened and found to contain over 500 grams of powder cocaine.

8.      On August 12, 2011, a United States Postal Inspector, posing as a postal worker, delivered the Express Mail package to 2862 North 56th Street, Milwaukee. Kendrea C. Lever, a female, took and signed for the package at approximately 9:50 a.m. Soon thereafter, Ms. Lever walked away from the premises and was arrested. Agents then executed a state search warrant at the residence and recovered the Express Mail package in the basement, under a coat. Just prior to executing the warrant, law enforcement officers, including Milwaukee Police Officer Gene Nagler and United States Postal Inspector Kakonis, observed Chamar D. Rogers, who was then driving a rental vehicle, circling the block on North 56th Street and driving rapidly out of the neighborhood as Ms. Lever was arrested.

9.      Later that morning, after advisement and waiver of Miranda rights, Kendrea Lever provided a statement to law enforcement agents. Ms. Lever advised that her boyfriend, Chamar D. Rogers, had asked her to accept a package to be delivered to the 56th Street residence, the residence of Ms. Lever's mother. Ms. Lever had received one package for Mr. Rogers previously, about a month earlier. Ms. Lever advised that she did not know what was in these

3

packages, but suspected that the packages contained drugs. Ms. Lever advised that several weeks after the first package arrived, she observed Mr. Rogers processing cocaine powder into crack cocaine at her apartment, located at 2200 North Martin Luther King Drive, Apt. 343 in Milwaukee. On August 12, 2011, agents went to this location with the consent of Ms. Lever and recovered men's shoes and clothing along with a mixer with white residue, a shoe box with white residue, and a box of baking soda, consistent with cocaine processing. Several items, including a black scale and mixing bowl, that Ms. Rogers told investigators she had seen Mr. Rogers use to process cocaine at the residence were no longer at the residence.

10. During the interview with agents, Ms. Lever advised that she communicated with Mr. Rogers by cell phone. Ms. Lever advised that Mr. Rogers used two cell phone numbers and that she communicated with him both orally and through text messages over these cell phones. Ms. Lever advised that she most often communicated with Mr. Rogers over his cell phone, 414-374-2551, and that Mr. Rogers also used 414-736-9481. Ms. Lever advised that she had been using a cell phone with the number 414-739-4576 to communicate with Mr. Rogers during the prior week and also used 414-499-6032. The agents recovered these phones from Ms. Lever at her arrest. Ms. Lever gave the agents consent to search her phones and download the contents.

11. In reviewing the contents of 414-739-4576, the agents found text messages exchanged between this phone and the two phones Ms. Lever attributed to Mr. Rogers. Significantly, on August 9, 2010, a text message was received from 414-374-2551 (the phone she identified as used by Chamar Rogers) which reads: "U go b able too let me keep tha rental cuz i need to pick up n tha mourning n i need u too do dat fo me again tha mail shit." An outgoing text followed which reads, "Yeah Chamar i'm not cut like you." Later that day two outgoing

4

text messages were sent to 414-374-2551. The first reads: "2862 n 56 53218 Lever;" the second reads: "2862 n 56 53210 Lever." The difference in the two is the last digit of the zip code; the first text has it as 53218, which is incorrect; the second has it as 53210, which is correct.

12. Postal Inspector Kakonis has reviewed the Express Mail package sent from Long Beach that contained the cocaine intercepted by law enforcement on August 11, 2011. The package was accepted by the Postal Service on August 10, 2011, the day after the text messages described in paragraph 11. The package was addressed to "Miss Lever , 2862 N. 56 ST., Millwaukee WI. 53210." The address line also has a zip code of 53218 that had been crossed out, with the number 53210 written below it. The zip code change is consistent with the text messages sent from Ms. Lever's phone the previous day. Postal Inspector Kakonis has advised me that the correction to the zip code could also have been made by a postal employee to facilitate delivery.

13. I believe that a review of the text and voicemail messages on the phones used by Mr. Rogers will evidence his receipt of these messages and will show his passing on these numbers, both erroneous and corrected, to others involved with him in the distribution of cocaine and the use of the mails to facilitate the distribution of cocaine. The text messages and voicemail will also show connections to others involved with Mr. Rogers in the distribution of cocaine.

14. There is evidence that packages containing drugs had been mailed from California to Milwaukee as part of an ongoing conspiracy involving Mr. Rogers at least as far back as early July of 2011. As noted above, Ms. Lever advised that she had received one package for Rogers a month before the August 11 package arrived. In addition, I have been advised by Postal Inspector Kakonis that on July 8, 2011, a postal worker attempted to deliver an Express Mail

5

package to 4667 N. 70th Street in Milwaukee. According to Inspector Kakonis, the handwriting on the Express Mail receipt for this package matches the handwriting on the package delivered to Ms. Lever on August 12, 2011. The July 8th package was sent from a "Mr. Reed" in Los Angeles, California to a "Miss Jackson" on North 70th Street in Milwaukee. When the postal worker attempted delivery of the package on July 8, 2011, the occupants of the premises said that they did not know a Miss Jackson. As the postal worker returned with the package to her vehicle, a black male approached her and asked if the package was for a "Miss Jackson." After the postal worker told the man that she could not give the package to him, he forcibly took the package from her hands, ran to a nearby vehicle and drove away. The circumstances are indicative of the package containing something of significant value, like narcotics. Within the past several days, the postal worker reviewed a photographic lineup containing a photo of Chamar Rogers, who is a black male, but was unable to identify anyone in the lineup as the person who took that package from her on July 8th.

15. A preservation letter has been sent to the provider, Verizon Wireless, and based on protocols established by the provider I believe that the voicemail and text messages sought through this search warrant are still at the provider.

16. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for its subscribers may be located on the computers of Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

6

17. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Verizon Wireless for weeks or months.

18. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

19. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

7

20. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

21. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

22. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular

8

device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

23. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

24. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

9

## CONCLUSION

25. Based on the forgoing, I request that the Court issue the proposed search warrant.

26. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

27. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_____
JILL CEREN
Special Agent
Drug Enforcement Administration
U.S. Department of Justice

Subscribed and sworn to
before me on _____, 2011

_____
PATRICIA J. GORENCE
United States Magistrate Judge
11-M-

10

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with 414-374-2551 that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be disclosed by Verizon Wireless

To the extent that the information described in Attachment A is within the possession, custody, or control of **Verizon Wireless, Verizon** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b.     All existing printouts from original storage of all of the text messages described above;

c.     All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from **July 1, 2011** to present;

d.     All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e.     All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device

associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.     All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from **July 1, 2011** to present;

g.     Incoming and outgoing telephone numbers, from **July 1, 2011** to present;

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. Sections 841(a)(1), 843(b) and 846 involving Chamar D. Rogers since July 1, 2011 including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.     the mailing, receipt and distribution of controlled substances

b.     Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

2